UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
|     Plaintiff, | : | CRIMINAL ACTION NO. |
| | : | 08-cr-004 (JCH) |
| v. | : | |
| | : | |
| ROSHAUN HOGGARD | : | |
|     Defendant. | : | MARCH 13, 2009 |
| | : | |

**RULING RE: DEFENDANT ROSHAUN HOGGARD'S MOTION *NUNC PRO TUNC* FOR JUDGMENT OF ACQUITTAL AND IN THE ALTERNATIVE A NEW TRIAL (DOC. NO. 618)**

**I.  INTRODUCTION**

On November 20, 2008, a jury found defendant, Roshaun Hoggard, guilty of Counts Two and Five of a superceding indictment, charging him with conspiracy to possess with intent to distribute, and to distribute, fifty grams or more of cocaine base, in violation of Title 21, United States Code, sections 841(a)(1) and 841(b)(1)(A)(iii), and possession with intent to distribute five grams or more of cocaine base, in violation of Title 21, United States Code, sections 841(a)(1) and 841(b)(1)(B)(iii).  Hoggard is incarcerated and awaiting sentencing.  He now moves the court for judgment of acquittal pursuant to Fed. R. Crim. P. 29(c) and for a new trial pursuant to Fed. R. Crim. P. 33.  For the following reasons, the court denies Hoggard's Motion (Doc. No. 616).

**II.  FACTS**

The superceding indictment charged Hoggard and sixteen others with various offenses.  Hoggard was charged with conspiring with nine other individuals to possess

1

with intent to distribute fifty grams or more of cocaine base ("crack"), and individually with possession with intent to distribute five grams or more of cocaine base. Hoggard, who was tried with two other co-defendants, Charles Bunch, and Genero Marte, was convicted by a jury of both charges.

At trial, the government presented evidence regarding the conspiracy led by Roshaun Hoggard to distribute cocaine in New Haven, Connecticut. The evidence concerning Hoggard adduced at trial consisted of: (1) testimony from cooperating witness Thames that Thames purchased crack cocaine from Hoggard on various occasions; (2) intercepted telephone calls between Hoggard and Thames communicating in a code that Thames explained stood for quantities of crack cocaine; (3) intercepted telephone calls between Hoggard and an individual in New York City, identified by the government as Genero Marte, that a reasonable jury could infer concerned supplying Hoggard with powder cocaine; (4) testimony of Special Agent Anastas Ndrenika and others that Hoggard traveled to New York City, and intercepted telephone calls from which a reasonable jury could infer that Hoggard traveled to New York City to meet Marte and that Marte supplied Hoggard with quantities of powder cocaine; (5) testimony of Special Agent Uri Shafir about a police seizure of approximately 272 grams of powder cocaine from Chris Lamont Sherman, and testimony by Shafir and intercepted calls around the time of that seizure from which a reasonable jury could conclude that Hoggard had gone with Sherman to New York City to obtain the powder cocaine seized from Sherman; (6) intercepted telephone calls suggesting that Hoggard was interested in Sherman's arrest; (7) testimony of Officer Michael Paleski that crack cocaine, along with a pot and kitchen utensils with cocaine

residue on them, were found in a safe in a residence where, the testimony asserted, Hoggard lived.

Thames testified that, when making orders for drugs, he and Hoggard often used code. Pursuant to this code, a "Monday" meant one eight-ball of crack cocaine which is the equivalent of one eighth of an ounce of crack, "Tuesday" meant two eight-balls, and "Fortune" meant four eight-balls. The government offered multiple intercepted calls between Hoggard and Thames in which these codes were used.

At the end of the government's case, the court made a Bourjaily finding that the government proved by a preponderance that Hoggard was a member of the conspiracy. See Bourjaily v. United States, 483 U.S. 171 (1987); United States v. Geaney, 417 F.2d 1116 (2d Cir. 1969). Following this ruling, Hoggard moved for a judgment of acquittal on both counts with which he was charged, pursuant to Rule 29. The district court denied Hoggard's Motion as to Count Two of the Superceding Indictment, concluding that the testimony of Kenneth Thames and the intercepted telephone calls in which Hoggard participated revealed "that he was engaged in the distribution of crack cocaine in New Haven and that he was obtaining supply of powder from a source in New York and converting it." Trial Tr. at 1469. The district court also denied Hoggard's Motion as to Count Five of the Superceding Indictment, concluding that based on the intercepted telephone conversations and testimony about the search warrant executed at 397 Edgewood Avenue on December 11, 2007, there was sufficient evidence to conclude that the drugs found in the safe belonged to Hoggard and thus to convict Hoggard on that count. Id. The court noted, however, that it was "a closer question than the conspiracy count." Id. The jury returned a verdict of guilty against Hoggard. Hoggard

now moves this court, pursuant to Rule 29(c), to set aside the jury's verdict with respect to both counts of conviction. He also moves in the alternative for a new trial pursuant to Rule 33(a).

## II.   STANDARD OF REVIEW

### A.   Motion for Judgment of Acquittal

Rule 29(a) of the Federal Rules of Criminal Procedure provides that district courts "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Rules 29(b) and (c) permit a court to reserve the decision on the motion until after the jury returns a verdict. "A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial bears a 'heavy burden.'" United States v. Hawkins, 547 F.3d 66, 70 (2d Cir. 2008) (quoting United States v. Parkes, 497 F.3d 220, 225 (2d Cir. 2007)). In deciding whether to grant a motion pursuant to Rule 29, the court should "view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." Hawkins, 547 F.3d at 70. A jury verdict shall be sustained "so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Parkes, 497 F.3d at 225-6) (internal quotation marks omitted). "[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." United States v. Glenn, 312 F.3d 58, 70 (2d Cir. 2002) (internal quotation marks omitted).

B.     Motion for a New Trial

In the alternative, Hoggard seeks that a new trial be ordered pursuant to Fed. R. Crim. P. 33. Rule 33(a) allows a district court to vacate "any judgment and grant a new trial if the interest of justice so requires." The Rule gives the trial court "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (internal citation omitted). The district court, when examining the entire case, must make an objective evaluation of the evidence and determine whether "'competent, satisfactory and sufficient evidence' in the trial record" supports the jury's verdict. Id. Unlike in a Rule 29 motion, where the court must draw every inference in favor of the government, in a Rule 33 motion the court is entitled to "weigh the evidence and in doing so evaluate for itself the credibility of the witnesses." United States v. Robinson, 430 F.3d 537, 543 (2d Cir. 2005) (quoting United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992)). However, it may not "wholly usurp the jury's role." Id. Although a trial court has substantially more discretion to grant a new trial under Rule 33 than it does to grant a motion for acquittal under Rule 29, the authority should be exercised "sparingly" and only in "the most extraordinary circumstances." Sanchez, 969 F.2d at 1414. "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." Ferguson, 246 F.3d at 133. A manifest injustice is found where the court has "a real concern that an innocent person may have been convicted." Parkes, 497 F.3d at 232.

## III. DISCUSSION

### A. Timeliness

The government argues that Hoggard's Motion is untimely. Rule 33 provides that motions for a new trial, other than those based upon newly discovered evidence, "must be filed within 7 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). Rule 29 similarly provides that "A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). With regard to the time limits of Rule 33, the Second Circuit has stated that: "These time limits are jurisdictional. If a motion is not timely filed, the district court lacks power to consider it." United States v. Dukes, 727 F.2d 34, 38 (2d Cir. 1984). Pursuant to Rules 29 and 33, Hoggard was required to file his Motions, or request an extension to file his Motions, no later than seven days after the jury's verdict of guilt on November 20, 2008. See Dukes, 727 F.2d at 38.

Under Rule 45, intermediate Saturdays, Sundays, and legal holidays are excluded when the period to be counted is less than 11 days. See Rule 45(a)(2). The Advisory Committee Notes make clear that the Rule 45 provisions apply to the time limits in Rules 29 and 33. See Fed. R. Crim. P. 45, Advisory Committee Notes to 2005 Amendments. Excluding non-countable days, no more than six days passed between the return of the verdict and the date Hoggard filed his Motion.[1] Therefore, it was timely

---

[1] The verdict was returned on Thursday, November 20, 2008. Thursday, November 27 was a legal holiday. In addition, the court was closed on Friday, November 28. The Rule does not make clear whether Friday, November 28 should be considered a legal holiday for purposes of the Rule. See Rule 45(a)(4). But even considering that day to not be a holiday, a maximum of six days elapsed between the verdict and the filing of the Motion.

6

filed.

   B. <u>Motion for Judgment of Acquittal</u>

The court finds that the evidence presented at trial was sufficient for a reasonable jury to conclude that Hoggard was guilty of conspiracy to possess with intent to distribute, and to distribute, fifty grams or more of cocaine base, as well as possession with intent to distribute five grams or more of cocaine base.

   1. Conspiracy Count

Hoggard acknowledges that, viewing the evidence in the light most favorable to the government, the jury could reasonably have concluded that telephone calls between Genero Marte and Hoggard, and the testimony of Kenneth Thames, suggested the presence of a drug conspiracy in which Marte would sell drugs to Hoggard, who then resold them to Thames. Hoggard contends, however, that the government's identification of Marte was insufficient, and once Marte is removed from the analysis, Hoggard's activities with Kenneth Thames rise only to the level of a buyer-seller relationship.

The court concludes, as it previously concluded at trial, that the voice identification was sufficiently well established to permit a jury to conclude that defendant Genero Marte was the voice identified on the intercepted telephone calls as "G." First, Special Agents Raymond Walczyk and Angelo Meletis testified that they listened to a recording of the voice of "G" in close proximity to the time of Marte's arrest, Special Agent Meletis spoke with Marte during and following his arrest, and Special Agents Walczyk and Meletis confirmed (by listening to Marte speak) that the man they had arrested was in fact the man identified as "G" on the calls they had previously

intercepted. Trial Tr. at 1165-67, 1263-66; see also id. at 582-86 (testimony of Special Agent Uri Shafir describing process by which voice of "G" was identified as that of Genero Marte). Second, Special Agent Meletis testified that when Marte was arrested, he had in his possession a cellular telephone that had been used by the man identified as "G" on the intercepted telephone calls. Id. at 1161-64, 1169-71.

With regard to Hoggard's relationship to Kenneth Thames, it is true that without more, a buyer-seller relationship is insufficient to establish a conspiracy. United States v. Parker, 554 F.3d 230, 234 (2d Cir. 2009) (quoting United States v. Gore, 154 F.3d 34, 40 (2d Cir. 1998)). "Notwithstanding that a seller and a buyer agree together that they will cooperate to accomplish an illegal transfer of drugs, the objective to transfer the drugs from the seller to the buyer cannot serve as the basis for a charge of conspiracy to transfer drugs." Id. This buyer-seller exception "protects a buyer or transferee from the severe liabilities intended only for transferors." Id. at 235.

In Hawkins, the Second Circuit reversed a judgment of acquittal that was entered by the district court on the basis that the government had only established a buyer-seller relationship rather than participation in the alleged conspiracy. 547 F.3d 66. More recently in Parker, the Second Circuit affirmed the convictions of the appellants who argued that the buyer-seller exception should have applied to them. While recognizing that determining whether the buyer-seller relationship amounted to a conspiracy is a "highly fact-specific inquiry," Hawkins, 547 F.3d at 74, the Second Circuit in Hawkins and Parker highlighted certain factors to consider. Id. These factors include, "whether there was prolonged cooperation between the parties, a level of mutual trust, standardized dealings, sales on credit ('fronting'), and the quantity of drugs

8

involved." Id.

These factors, with the exception of sales on credit, are present in Hoggard's case. Even absent positive voice identifications of any other individual, a reasonable jury could have found that Thames's testimony of his regular dealings with Hoggard, supported by the multiple intercepted telephone calls offered by the government between Hoggard and Thames during which Thames arranged to buy what he testified was crack cocaine from Hoggard, demonstrated "prolonged cooperation" between Hoggard and Thames. According to Thames's testimony, as supported by the intercepted telephone calls, Hoggard sold Thames "eight balls" of crack cocaine, usually one or two at a time, but sometimes up to four at a time. Trial Tr. at 241-42. They exchanged drugs once or twice per week in late 2007. Id. at 240. Thames would break each "eight ball" into "dime bags" for further resale. Id. at 244-45. Thames also sent customers to Hoggard when they were interested in buying "eight balls," since Thames did not sell drugs in that quantity. Id. at 245-46. The provision of drugs by Hoggard to Thames for resale, the referral of customers who wanted to purchase larger quantities by Thames to Hoggard, and the repeated, brief, coded exchanges between Hoggard and Thames evidence mutual trust and the knowledge and involvement of Hoggard and Thames. See Hawkins, 547 F.3d at 76. Further, these factors, and the frequency and repetition of the phone calls, see Trial Tr. at 253-57, 259, 261-68, indicated that Hoggard and Thames engaged in "standardized dealings." Hawkins, 547 F.3d at 74. With respect to the quantity of drugs between Hoggard and Thames, the phone calls and testimony show arrangements to purchase multiple eight balls of crack cocaine, once or twice per week, which Thames, according to his testimony, then resold

9

in "dime bag" quantities.  The repeated provision of multiple eight balls for resale is not consistent with a buyer-seller relationship.  This evidence, viewed in the light most favorable to the government, is more than sufficient to show that Hoggard was engaged in a conspiracy to distribute crack cocaine, not just a buyer-seller relationship with Kenneth Thames.

Furthermore, even aside from the issues Hoggard has raised with regard to the voice identification of Genero Marte, Hoggard participated in numerous telephone conversations from which a jury could conclude that Hoggard was obtaining cocaine powder from a source of supply in New York City, cooking it into crack cocaine, and distributing it in New Haven.  The government introduced telephone calls between Hoggard and "G," his source of supply in New York City, between Hoggard and an individual identified as "June," between Hoggard and Robert Rawls, and between Hoggard and various other unidentified individuals.

The jury could infer that the calls between Hoggard and "G" related to the purchase of wholesale quantities of powder cocaine from a source of supply in New York City, which Hoggard would then convert into crack for resale in New Haven.  In one series of calls, Hoggard complained to G about the quality of the powder cocaine that G had supplied to him, and G conveyed a willingness to exchange the previously supplied narcotics for new product.  From these calls, a reasonable jury could infer that Hoggard was engaged in a conspiracy to distribute crack cocaine with G.

The government also offered intercepted phone calls between Hoggard and "June," that took place after another co-conspirator, Chris Lamont Sherman, was arrested.  In these calls, Hoggard discussed the arrest of Sherman and the fact that a

significant quantity of powder cocaine had been seized during Sherman's arrest. Hoggard discussed what would happen to Sherman and also discussed the seized drugs. From his expressions of concern about whether Sherman would implicate others in the crime, the jury could infer that Hoggard's interest was that of a co-conspirator, not just that of one friend concerned with the welfare of another. All of this evidence, viewed in the light most favorable to the government, is sufficient to show that Hoggard was a member of the conspiracy to distribute crack cocaine charged in Count Two of the Superceding Indictment, and not just a member of a buyer-seller relationship.

### 2. Possession Count

Hoggard argues that there was insufficient evidence to convict him on the charge of possession with intent to distribute five grams or more of crack cocaine. He contends that the government's evidence as to the possession count centered around drugs found in a safe at 397 Edgewood Avenue in New Haven, and that no witnesses testified that Hoggard lived there, or that the cocaine base found in the safe belonged to Hoggard. He argues that the safe was found in a common area, accessible to all the residents, including co-conspirator Robert Rawls. No evidence was offered, Hoggard contends, as to the ownership of the safe, or where, when, and by whom it was purchased. Other drug paraphernalia was also found in common areas, suggesting that the drugs may have been for personal use. Nor was evidence offered of a lease for the premises or other evidence that might link Hoggard to the premises as a tenant. Nor did the government attempt to call any of the other occupants of the apartment to testify. Finally, he contends that the jury impermissibly speculated that it was Hoggard's

drugs in the safe and concluded that he was guilty of the the possession count because of inculpatory evidence pertaining to the conspiracy count.

The court disagrees. There was testimony from which a reasonable jury could conclude that Hoggard resided at 397 Edgewood Avenue. Officer Kaitlin Flavin testified that she saw Hoggard enter the residence at 397 Edgewood Avenue after returning from New York City late at night. Trial Tr. at 928-930. Special Agent Angelo Meletis observed a red Ford Expedition that he had seen on prior surveillance of Roshaun Hoggard return to 397 Edgewood Avenue. Trial Tr. at 705. Special Agent Meletis observed two individuals exit the vehicle, whom he could not positively identify but whom he believed were consistent with the physical appearance of Roshaun Hoggard and Robert Rawls. Trial Tr. at 716-719. Officer Michael Paleski testified that when officers went to 397 Edgewood to execute a search warrant, two women were present at the residence, one of whom, Ketcha Savain, identified herself as Roshaun Hoggard's girlfriend. Id. at 1379-80. Special Agent Uri Shafir testified that he had conducted surveillance numerous times of Hoggard, Rawls, and Savain at 397 Edgewood Avenue. Id. at 481. Finally, Officer Paleski testified that during his search of 397 Edgewood Avenue, he found documents containing the names of Hoggard and Rawls. Id. at 1334.

There was testimony by Officer Paleski that the safe contained white chunks (stipulated to be cocaine), as well as kitchen utensils and a soup pan with white powder residue (stipulated to be cocaine residue). Trial Tr. at 1322-27. The government offered intercepted telephone recordings containing Hoggard's complaints about the quality of what Hoggard was cooking. From those conversations, as well as conversations and testimony regarding Hoggard's travel to New York City to exchange

what the government contended was powder cocaine, a reasonable jury could have concluded that Hoggard had been cooking crack cocaine at his residence at 397 Edgewood Avenue. From the evidence of cooking, as well as the evidence that 397 Edgewood Avenue was Hoggard's residence, a reasonable jury could have inferred that the crack cocaine found in the safe, along with the cocaine-stained pot and kitchen utensils, belonged to Hoggard.

For the foregoing reasons, the court finds that Hoggard did not meet his burden of establishing that there was insufficient evidence to sustain his conviction as to either count. Accordingly, the court denies Hoggard's Motion for Judgment of Acquittal.

C.   Motion for a New Trial

Although the court has more discretion to grant a Rule 33 motion, the court finds that there are no "extraordinary circumstances," Ferguson, 246 F.3d at 133, present in this case to warrant setting aside the jury's verdict and ordering a new trial. In examining the entire case, as it did in ruling on the Rule 29 motion, the court finds that there is sufficient evidence in the trial record to support the jury's verdict and that the jury's verdict did not result in a "manifest injustice." Therefore, the court denies Hoggard's alternative Motion for a New Trial.

## IV.     CONCLUSION

For the foregoing reasons, Hoggard's Renewed Motion for Judgment of Acquittal under Fed. R. Crim. P. 29(b), and in the Alternative for a New Trial under Fed. R. Crim. P. 33(a) (Doc. No. 618), is **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 13th day of March, 2009.


                             /s/ Janet C. Hall
                             Janet C. Hall
                             United States District Judge